IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE

| | |
|---|---|
| AMSUM & ASH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION; AND THE UNITED STATES OF AMERICA,<br><br>Defendants. | Court No. 26-01551 |
| MATRA AMERICAS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION; AND THE UNITED STATES OF AMERICA,<br><br>Defendants. | Court No. 26-01417 |
| CANADIAN FOREST PRODUCTS LTD. AND CANFOR PULP AND PAPER SALES LTD.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION; AND THE | Court No. 26-01562 |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Defendants. | |
| OPTIMA STEEL INTERNATIONAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION; AND THE UNITED STATES OF AMERICA,<br><br>Defendants. | Court No. 26-01461 |
| AA METALS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION; AND THE UNITED STATES OF AMERICA,<br><br>Defendants. | Court No. 25-00714 |

## **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO LIFT STAY AND MOTION TO CONSOLIDATE**

Pursuant to Rule 7 and 42(a) of the Rules of the U.S. Court of International Trade, defendants, the United States *et al.* (the Government), respectfully oppose the Motion to Lift the Stay for the Limited Purpose of Addressing IEEPA Tariff Refunds for AD/CVD Entries and Motion to Consolidate, filed by plaintiffs, Amsum & Ash, Inc. (Court No. 26-01551), Matra Americas, LLC (Court No. 26-01417), Canadian Forest Products Ltd. and Canfor Pulp and Paper

Sales Ltd. (Court No. 26-01562), Optima Steel International, LLC (Court No. 26-01461), and AA Metals, Inc. (Court No. 25-00714). *See, e.g.*, ECF Nos. 12, 13, Ct. No. 26-01551.[1] In their motion to lift the stay, plaintiffs ask the Court to lift the stay of further proceedings to "permit[] Plaintiffs to explain the need to immediately refund International Emergency Economic Powers Act ('IEEPA') tariffs for entries for which liquidation is suspended by operation of law due to ongoing antidumping duty and countervailing duty ('AD/CVD') proceedings." *See* ECF No. 12 at 2. Plaintiffs further move to consolidate these cases with *Aditya Chemicals USA Inc. et al. v. United States et al.*, Ct. No. 26-000134.

For any party seeking to lift the stay, the Court has imposed a showing of good cause to explain why their case merits earlier consideration. ECF No. 7; USCIT AO 25-02. Here, as we explain further below, plaintiffs' motion fails to demonstrate that lifting of the stay is warranted. The stay serves the interests of judicial economy and orderly administration of refunds of IEEPA duties, which are being implemented through a phased administrative process. Plaintiffs' motion does not identify any development that renders a stay unnecessary but rather demonstrates why this matter should remain stayed pending the outcomes in *Aditya* and in *Freestyle World Inc. v. United States*, Ct. No. 26-01088. The relief sought by plaintiffs concerns U.S. Customs and Border Protection (CBP)'s implementation of the Consolidated Administration and Processing of Entries (CAPE) refund process, which the Court is currently addressing in *Freestyle*, and, as plaintiffs' motion validates, the refund-related issues regarding suspended AD/CVD entries, which is being addressed in *Aditya*. Therefore, because plaintiffs have failed to show any reason why their case would merit earlier consideration, much less good cause, the Court should deny their motion.

---

[1] Because plaintiffs' motions are substantially the same, for ease of reference, the Government will cite the motions filed in Ct. No. 26-01551.

## BACKGROUND

In response to the decision in *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026), in which the Supreme Court held that IEEPA (50 U.S.C. § 1701 et seq.) did not authorize the President to impose tariffs, this Court issued a universal injunction in pending cases challenging the imposition of such tariffs. The Court required CBP to liquidate or reliquidate entries for importers who paid IEEPA duties and to refund any such duties paid with interest as provided by law, among other obligations. The United States, through CBP, has indicated that it "is committed to refunding IEEPA duties as quickly and efficiently as possible to comply with all legal requirements and final court orders." Thomas Decl. ¶ 6 (ECF No. 98-1 in *V.O.S. Selections, Inc. v United States*, Court Int'l Trade No. 25-00066).

1. To address an unprecedented volume of refunds, and to respond to the Court's orders efficiently, "CBP developed and deployed, within a 45-day period of time, a new capability within CBP's system of record for imported merchandise — the Automated Commercial Environment (ACE) — to calculate and provide valid refunds of additional ad valorem duties imposed under IEEPA, referred to as the Consolidated Administration and Processing of Entries (CAPE) functionality." *Id.* "CAPE enables the update, liquidation, and calculation of interest for each impacted entry, along with the consolidation of refunds by importer of record or CBP Form 4811 Designee and liquidation date, providing for the required information as well as efficiency gains for both industry and government." *Id.*

CBP is developing and deploying CAPE in phases. Thomas Decl. ¶ 7. CBP deployed Phase 1 on April 20, 2026, allowing the functionality of CAPE to be used for "entries that are either unliquidated or up to 80 days past their liquidation date. Following CBP review, these entries will be liquidated or reliquidated and refunds will be issued." CBP, Consolidated

Administration and Processing of Entries (CAPE) Phase 1, at 1 (Apr. 8, 2026), https://perma.cc/3X6U-TY3F; Thomas Decl. ¶ 8. Phase accepts CAPE declarations containing entries for which the liquidation status is "suspended," "extended," or "under review." Mar. 30, 2026 Lord Decl. ¶ 14a (ECF No. 24-5 in *Freestyle Worldwide, Inc. v. United States, et al.*, Court Int'l Trade No. 25-01088). This includes entries "subject to antidumping and/or countervailing duties (AD/CVD)," including "Type 03" entries, where the "liquidation is suspended pending instructions from the U.S. Department of Commerce (DOC)." *Id.* Such entries "will be accepted on a CAPE Declaration and the IEEPA duties will be removed, but CBP will not liquidate or process the refund of the IEEPA duties until it receives instructions from DOC to lift the suspension and liquidate the entries." *Id.* In other words, CBP will liquidate entries that are "suspended, extended, or under review" in "the normal course, and the IEEPA duties will be refunded upon liquidation." *Id.*

CBP deployed Phase 2 on June 29, 2026, allowing the functionality of CAPE to be used for "entries flagged for reconciliation, for which no Type 09 reconciliation entry has been filed, which remain unliquidated or are within 80 days of liquidation." Thomas Decl. ¶ 10; July 1, 2026 Lord Decl. ¶ 7 (ECF No. 39 in *Euro-Notions Fla., Inc. v. United States*, Court Int'l Trade No. 25-00595).

CBP deployed CAPE Phase 3 on October 6, 2026, "which covers finally liquidated entries filed by plaintiffs for which the Court has ordered reliquidation, including those entries subject to a protest." Oct. 26, 2026 Lord Decl. ¶ 8 (ECF No. 65 in *Freestyle*, Ct. No. 26-01088). For CAPE Phase 3, as of October 23, 2026, CBP has accepted 3,960 CAPE declarations for processing covering 15,834,190 entries. *Id.* CBP has been providing access to Phase 3 on a rolling basis, accepting submissions by plaintiffs of a valid import of record (IOR) number. *Id.*

CAPE has been used more than 315,000 times since its launch, for submissions covering more than 44 million entries totaling approximately $137.9 billion, and refunds worth more than $127.7 billion (including interest) have been approved. *Id.* The CBP declarations make clear that CBP has invested significant resources in the refund effort, and that effort is continuing as CBP continues to process declarations for Phases 1 through 3.

2. Plaintiffs filed these actions On December 17, 2025, March 4, 2026, and March 6, 2026, challenging the lawfulness of duties imposed under IEEPA. ECF No. 5, Ct. Nos. 26-01551, 26-01417, 26-01562, 26-01461, 25-00714. On December 23, 2025, and March 6, 2026, pursuant to Administrative Order 25-02, these cases were stayed. *See*, *e.g.*, ECF No. 7, Ct. No. 26-01551; *See* ECF No. 8, Ct. No. 25-00714. The Court stayed the cases to "facilitate the administration of new cases that continue to be filed challenging the imposition of tariffs" under IEEPA. *See* USCIT AO 25-02. The Court indicated that it "expects to determine the appropriate next steps for resolution of the New IEEPA Tariff Cases following a final, unappealable decision in *V.O.S. Selections, Inc. v. United States,* 49 CIT __, 772 F. Supp. 3d 1350 (2025); *aff'd in part, vacated in part*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, Appeal No. 25-250 (S. Ct.)." *Id.* The Court instructed that "[a]ny party seeking to lift the stay before the court does so sua sponte must provide good cause indicating why their case merits earlier consideration." *Id.* These cases were assigned to the presiding judge on March 17 and March 26, 2026. *See, e.g.*, ECF No. 9, Ct. No. 26-01551; ECF No. 9, Ct. No. 25-00714. Plaintiffs first moved to lift the stay on March 26, 2026, which the Court denied the next day. *See, e.g.*, ECF Nos. 8, 10, Ct. No. 26-01551. On July 22, 2026, the Court entered an order requiring CBP to "reliquidate, without regard to IEEPA duties, any and all of Plaintiffs entries that have been liquidated for more than 80 days and on which Plaintiffs made estimated deposits pursuant to IEEPA." *See, e.g.*, ECF No. 11. Ct. No.

26-01551. The Court further added that "this action remains stayed except to the extent this order directs specific actions by the parties." *Id.*

Plaintiffs now renew their request that this Court lift the stay entered on March 26, 2026, and ask the Court to issue an order that any relief deemed appropriate by the Court with regard to the matters addressed in plaintiffs' motion be entered in due course. ECF No. 12 at 11. As we demonstrate below, plaintiffs' request to lift the stay and to issue these orders is not supported by the law and, regardless, would frustrate judicial economy and sound case management principles. For these reasons, the request for the lifting of the stay should be denied.

**DISCUSSION**

Plaintiffs fail to show the need or good cause for the lifting of the stay. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (a stay is reviewed for abuse of discretion). A stay is warranted where it will preserve party and judicial resources to no one's detriment and simplify the issues before the Court. *Landis*, 299 U.S. at 254–55. That discretion extends to a stay entered pending resolution of related litigation whose outcome "may substantially affect or be dispositive of the issues" in the stayed case. *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) (citing *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) ("In the exercise of a sound discretion it may hold one lawsuit in abeyance to abide the outcome of another"). Moreover, here, for any party seeking to lift the stay, the Court has imposed a

showing of good cause to explain why their case merits earlier consideration. *See* USCIT AO 25-02.

1. As plaintiffs themselves acknowledge, ECF No. 12 at 3, this Court has lifted the stay of proceedings in *Aditya Birla Chemicals USA Inc. et al. v. United States et al.*, Court No. 26-00134, and has ordered the parties to address the issue of entries for which IEEPA duties were deposited but that are suspended pending liquidation instructions from the Department of Commerce (Commerce). Contrary to plaintiffs' assertions, the lifting of the stay in *Aditya* does not justify lifting the stay here. The issues raised in plaintiffs' motion, which underpin their stated reasons for lifting the stay, are being litigated in *Aditya*, which plaintiffs acknowledge. If plaintiffs genuinely believe the relevant issues are already being litigated in *Aditya*, as is evident from their simultaneous request for consolidation of these actions into the *Aditya* matter, that fact weights against lifting the stay of *these* cases because additional briefing would become unnecessary, the Court will be able to resolve the common issues in the *Aditya* proceeding, and the stay here would continue to serve its purpose to efficiently manage these and the thousands of related cases that are currently stayed. Therefore, the proceedings in *Aditya,* in which the parties are currently briefing the very issues that plaintiffs seek to address in these cases, only further supports holding this matter "in abeyance" to abide by the outcome of *Aditya*. *See American Life*, 300 U.S. at 215.

Moreover, as the Court is aware, the stays issued pursuant to Administrative Order 26-02 serve to provide a coordinated, phased administration of refunds across many similarly situated actions. Refunds are then being implemented through orders entered in the lead proceedings, in coordination with CBP's deployment of CAPE. That structure exists so that refund entitlements are resolved uniformly rather than through hundreds of individualized, and potentially

inconsistent, orders. This is particularly true where the Court has lifted the stay in *Aditya* to address the very issues plaintiffs raise here. Breaking with the current phased approach would divert attention from the massive ongoing CAPE refund effort, which requires resources from both CBP and the U.S. Department of Justice. Indeed, the lift of the stay in *Aditya* has resulted in plaintiffs' present motion, ECF No. 13 at 3 ("[I]n light of the Court's recent decision to lift the stay in *Aditya* . . . Plaintiffs respectfully review their previous motion to lift the stay[.]"). Granting these plaintiffs the relief they request would invite even more plaintiffs to seek their own preferred sequencing for the development of CAPE or to seek to litigate the issue of suspended AD/CVD entries currently pending in *Aditya*. Such an approach would not promote judicial efficiency nor preserve party and judicial resources. Accordingly, plaintiffs' request to lift the stay must be denied.

2. In addition, plaintiffs' substantive arguments regarding delayed refunds do not constitute good cause for lifting the stay. As plaintiffs acknowledge, refunds of IEEPA duties are currently being provided through the liquidation process. ECF No. 12 at 4–5. But for certain type 03 entries, liquidation may be suspended by operation of statute, 19 U.S.C. §§ 1671b(d)(2), 1673b(d)(2), or enjoined by Court order. 19 U.S.C. § 1516a(c)(2). Deposits are estimated, and the reconciliation of estimated deposits against final liability occurs at liquidation once the suspension of liquidation has been lifted. *Id.* §§ 1504(d), 1505(b)–(c); *see also id.* § 1677g. CBP cannot liquidate such entries absent the lifting of suspension of liquidation, and the Court cannot bypass the statutory scheme created by Congress by ordering CBP to do so. Although plaintiffs argue that refunds of IEEPA duties would not be issued in a reasonable amount of time through the liquidation process, ECF No. 12 at 5, Congress has explicitly created a statutory scheme for refunds of *any* duties via liquidation or reliquidation, and the importer is

compensated for the timing of the refund with interest accruing on the principal of the refund amount from the date of the deposit to the date of liquidation. *Id.* As we explained in connection with the *Aditya* matter, it is unnecessary to depart from the Court's prior orders to CBP to liquidate entries, including type 03 entries, without regard to IEEPA duties, through the CAPE liquidation process. Pre-liquidation refunds are not possible to be automated through the CAPE process. *See* Apr. 14, 2026 Lord Decl. ¶ 8, *Euro-Notions Florida, Inc. v. United States*, Ct. No. 25-00595 (stating that pre-liquidation refunds "require manual processing, and are limited to the principal amount, because, pursuant to 19 U.S.C. § 1505(c), interest cannot be refunded until liquidation" and that this process "requires CBP to manually adjust the collection record in ACE, move funds to suspense accounts, and generate manual refunds"). Given the manual process required, issuing pre-liquidation refunds would impose real costs on the Government and parties not before the Court. For example, of the 44 million entries covered by CAPE declarations, about 6.7 million entries failed entry level validations for various reasons. Oct. 26, 2026 Lord Decl. ¶ 4. The implementation of Phases 1 through 3 continues to require significant resources from CBP officials to address issues arising out of these CAPE submissions. Directing CBP to prioritize pre-liquidation refunds of type 03 entries necessarily deprioritizes refunds for other importers, including small importers whose entries present no antidumping or countervailing duty complications, and who are seeking to benefit from refunds under Phases 1 through 3. Plaintiffs' motion does not acknowledge that trade-off, much less show that the balance of equities and the public interest favor it.

Moreover, as we explained in our opposition to the motion to lift the stay in *Aditya*, ECF No. 14, plaintiffs have not demonstrated any irreparable harm from waiting for their entries to be processed through liquidation. First, courts have routinely found that no irreparable injury exists

where duties can later be refunded with interest. *See* Order, *Burlap & Barrel, Inc. et al. v. Trump et al.*, ECF No. 15 at 8 (Fed. Cir. June 11, 2026) (stating that the Court is "persuaded that, if the tariffs are ultimately found unlawful, refunds with interest reduce any harm from the initial payments themselves or any potential refund delays."); *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 779 F. Supp. 3d 1300, 1310 (Ct. Int'l Trade 2025) (stating that "interest on any excess cash deposits paid will continue to accrue until liquidation, providing the statutorily provided offset to any harm arising from the unavailability of the funds until that time") (citing 19 U.S.C. § 1505(b), (c)); *see also AGS Company Automotive Solutions, et al. v. U.S. Customs and Border Protection et al.*, 813 F. Supp. 3d 1295 (Ct. Int'l Trade 2025).

Second, any alleged harm from the introduction of IEEPA duties to the calculation of export price and constructed export price is speculative. *See* ECF No. 12 at 6 n.3. In calculating the export price or constructed export price, duty charges must be considered part of the price paid for the subject merchandise under 19 U.S.C. § 1677a(c)(2)(A). As the Court is well aware, the methodologies and rationale underlying the very technical and complex calculations Commerce conducts are not ones that could ever be adjudicated in this proceeding. For example, just as a technical matter, once plaintiffs receive a refund, it will matter during what period of review that refund is received for Commerce to know whether or how to consider it in its calculations. Given the lack of clarity as to the effect of any refunds on any particular antidumping proceedings before Commerce, plaintiffs have no basis to claim that CBP's "refusal to issue IEEPA refunds on AD/CVD entries until liquidation" has the direct effect of "increase[ing] antidumping duty margins" calculated by Commerce, a determination that must be reviewed on the record before Commerce. *See* 28 U.S.C. § 2640(b).

Finally, pre-liquidation refunds, although authorized by 19 U.S.C. § 1520(a)(4), are discretionary and generally "limited to situations involving very few entries" because it involves an entry-by-entry administrative process that is time-consuming and burdensome for CBP. *See Comm. Overseeing Action for Lumber Int'l Trade Investigations*, 779 F. Supp. 3d at 1310. Moreover, this Court has previously found that an importer's desire for pre-liquidation refunds does not meet the "extraordinary circumstances" standard of USCIT R. 60(b)(6), finding that "any delay experienced by [plaintiff] in obtaining refunds via the normal course of liquidation because of its participation in parallel proceedings, while perhaps unfortunate, is not an extraordinary circumstance sufficient to merit pre-liquidation refunds." *Fontaine Inc. v. United States*, 824 F. Supp. 3d 1374, 1381 (Ct. Int'l Trade 2026). There, the Court further "recognized that 'the absence of certainty' surrounding the 'final assessment of . . . duties is a characteristic of the retrospective system of administrative reviews designed by Congress,'" *id.* (quoting *SKF USA Inc. v. United States*, 491 F. Supp. 2d 1354, 1363 (Ct. Int'l Trade 2007)), and that "the standard practice for returning deposits [on any particular group of entries] is for CBP to wait until all administrative and judicial proceedings from both the CVD and AD proceedings are finalized." *Id.* Here, issuing pre-liquidation refunds for hundreds of thousands of entries, which would require manual processing by CBP personnel, would divert resources from and thus significantly impact CBP's ability to provide IEEPA refunds for other entries in CAPE, despite only accounting for a small percentage of the overall outstanding entries for which IEEPA duties were deposited. Such a trade-off runs against requiring CBP to process pre-liquidation refunds and does not provide good cause to lift the stay in these matters.

3. Finally, because this Court should not lift the stay of these actions, the Court should not consolidate these cases with *Aditya*, Ct. No. 26-00134. Consolidation with *Aditya*,

contrary to plaintiffs' assertion, *see* ECF No. 13 at 5, will not lead to a more orderly resolution of the issues raised in plaintiffs' motion to lift the stay or those currently pending in *Aditya*. Rather, consolidation will increase complexity, create administrative burdens for the Court, complicate case management, and frustrate judicial economy. Plaintiffs seek to add six other parties represented by a separate set of counsel from those appearing in *Aditya*. Consolidation at this stage would thus increase the number of parties and counsel, increase filings and coordination among the parties, and require revisions to the scheduling order entered in *Aditya* with increased potential for scheduling conflicts. Moreover, the relevant legal issues can be resolved in *Aditya* without consolidation, and plaintiffs admit that they seek resolution of the same substantive issue being litigated therein. *See* ECF No. 13 at 4–5. The Court should therefore maintain the current stays in these actions pending resolution of both *Freestyle* and *Aditya*, whose outcome will "substantially affect or be dispositive of the issues" in these cases. *See Bechtel Corp.*, 544 F.2d at 1215.

WHEREFORE, defendants respectfully request that plaintiffs' motions be denied.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Mathias Rabinovitch
MATHIAS RABINOVITCH
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346

New York, New York 10278
(212) 264-0484
*Attorneys for Defendant*

Dated: November 5, 2026